```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

Marie Gaudette,
on behalf of D.P.

    v.                              Civil No. 13-cv-08-JL
                                          Opinion No. 2014 DNH 022

Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration


**SUMMARY ORDER**

    Marie Gaudette, acting on behalf of her minor daughter (known pseudonymously as "DP") has appealed the Social Security Administration's denial of DP's application for Supplemental Security Income. An administrative law judge at the SSA ("ALJ") ruled that DP was not disabled because her severe impairments (anxiety disorder, attention deficit-hyperactivity disorder ("ADHD"), and lactose intolerance with chronic constipation), either alone or in combination, did not meet, or medically equal, a listed impairment, nor did they functionally equal the severity of a listed impairment. See 20 C.F.R. §§ 416.924(d). The Appeals Council later denied Gaudette's request for review of the ALJ's decision, see id. § 416.1479, so the ALJ's decision became the SSA's final decision on DP's application, see id. § 416.1481. Gaudette appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Gaudette has filed a motion to reverse the decision, see L.R. 9.1(b)(1), challenging the ALJ's decision as unsupported by substantial evidence. Specifically, Gaudette argues that the ALJ erred by finding (1) that DP's ADHD was not medically equal to a listed impairment without obtaining an updated medical opinion to that effect, and (2) that DP's impairments did not functionally equal a listed impairment. The Commissioner of the SSA has cross-moved for an order affirming the decision, see L.R. 9.1(d), defending the ALJ's findings. As explained below, the court denies Gaudette's motion, and grants the Commissioner's.

The listing for ADHD requires a marked degree of inattention, impulsiveness, and hyperactivity that, in the case of a child (like DP) between 3 and 18 years of age, results in marked impairment in age-appropriate functioning in at least two of the following areas:  (a) cognitive/communicative functioning, (b) social functioning, (c) personal functioning, and (d) maintaining concentration, persistence, or pace. 20 C.F.R. § 404, subp. P, app. 1, pt. B, ¶ 112.11 (cross-referencing id. ¶ 112.02(B)(2)). The ALJ found that DP's ADHD did not meet or medically equal this listing because "she does not have markedly impaired functioning" in any of those areas.

Gaudette's motion does not identify the areas in which she claims that DP suffers from the requisite degree of impairment.

Instead, the motion criticizes the ALJ for relying on the opinions of what (in their joint statement of facts) the parties identify as a "State Agency" psychologist and a medical doctor that, while DP suffered from a medically determinable case of ADHD (among other medically determinable impairments), it did not reach the level of a severe impairment.  So far as the court can tell, Gaudette takes this line of attack based on her view that the ALJ necessarily relied on these opinions in finding that DP's ADHD did not medically equal the listing--a view based in turn on her position that the ALJ could not have made such a finding without a medical opinion to that effect.

This is so, Gaudette intimates, by the force of a policy interpretation by the SSA, Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Pyschological Consultants and Other Program Physicians at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, SSR 96-6p, 1996 WL 374180 (SSA 1996).  Gaudette reads this ruling to require that the ALJ "receive expert opinion evidence from a physician . . . on the issue of equivalence."  While some courts have endorsed this interpretation of SSR 96-6p, see, e.g., Stratton v. Astrue, ___ F. Supp. 2d ___, 2012 WL 1852084, at *11-*13 (D.N.H. May 11, 2012), rept. & rec. adopted, No. 11-256 (D.N.H. May 18, 2012),

this court need not decide whether to do so here because--as Gaudette's argument assumes--a "state agency physician's opinion that [the] claimant was not disabled fulfills the medical opinion requirement," Phelps v. Astrue, 2011 DNH 107, 12 n.2, insofar as such a "requirement" exists. Here, again, a state agency physician (joined by a state agency psychologist) found that DP was not disabled, i.e., that her ADHD did not reach the level of a severe impairment. So the record contained the medical opinion that Gaudette claims was necessary for the ALJ to find that DP's ADHD was not equivalent to a listed impairment.

Gaudette suggests that this opinion was stale because it was rendered in early 2010, prior to a "vast amount of medical evidence" that was generated between then and the hearing before the ALJ, in September 2011. But Gaudette does not identify any evidence, of any vintage, that undermines the state agency physician's conclusion.[1] That includes any contrary medical

---

[1] Instead, Gaudette makes a passing reference to 36 different exhibits that span nearly half of the 663-page record. That does not remotely approach any sort of cognizable argument that this court could hope to evaluate (as opposed to come up with on its own). Indeed, thus court has cautioned that simply referring to evidence before the ALJ is not enough to raise an argument that the ALJ erred in his or her consideration of that evidence. Montero v. Colvin, No. 12-412, 2013 WL 4042424, at *1 n.1 (D.N.H. Aug. 8, 2013). The same is true of Gaudette's passing reference to a vision deficit. In a finding that Gaudette does not question, the ALJ noted that DP "was evaluated for visual complaints" in December 2008, but "has not had any ongoing treatment for this concern." In light of that unchallenged

opinion that she might have adduced at the hearing before the ALJ--where Gaudette bore the burden of proving that DP's "condition met or equaled the level of severity required for presumptive disability status." Hernandez-Torres v. Sec'y of HHS, 968 F.2d 1210 (table), 1992 WL 164715, at *2 (1st Cir. July 17, 1992). Under these circumstances, the ALJ properly found that DP's ADHD did not medically equal a listed impairment. See Phelps, 2011 DNH 107, 12-13.

The ALJ also found that DP's impairments, either alone or in combination, did not functionally equal any listed impairment. For an impairment or combination of impairments to "functionally equal the listings . . . it must result in marked limitations in two domains of functioning or an extreme limitation in one domain." 20 C.F.R. § 416.926a(a) (quotation marks omitted). These "domains" are: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for oneself, and (vi) health and physical well-being. Id. § 416.926a(b)(1). The ALJ found that DP had less than marked limitations in each of these domains.

---

chronology, the ALJ properly relied on the state agency physician's 2010 opinion that DP was not disabled by any impairment or combination thereof (which would include the vision problems she had reported in 2008).

In challenging these findings, Gaudette merely states that "[d]espite the overwhelming evidence that [DP's] impairment(s) is . . . functionally equal to a listed impairment, the ALJ failed to properly evaluate this issue."  But this section of Gaudette's motion does not refer to any such evidence--or, indeed, any evidence at all--or elaborate on her charge that the ALJ "failed to properly evaluate [the] issue" of functional equivalence.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

In other sections of her motion, Gaudette argues that the ALJ erred by giving little weight to the opinions of a nurse practitioner who treated DP, Bonnie Proulx.  Proulx opined, in September 2011, that DP suffered from marked limitations in attending to and completing tasks and in caring for herself, as well as an extreme limitation in health and well-being.  Gaudette suggests that, because Proulx had seen DP "on numerous occasions" over a four-year period, her "medical opinion is the one most likely to provide a detailed, longitudinal picture of [DP's] medical impairment(s) . . . pursuant to [20 C.F.R.] § 416.927(c)(2)."  As Gaudette seems to acknowledge, though, Proulx--as a nurse practitioner--is not an "acceptable medical

6

source," 20 C.F.R. § 416.913(a), so her opinions are not "medical opinions" under § 416.927.  See Titles II and XVI:  Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, SSR 06-03p, 2006 WL 2329939, at *2 (SSA 2006).

It is true that, as Gaudette also points out, opinions from so-called "other medical sources" like nurse practitioners "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file," and the ALJ "generally should explain the weight given to opinions from these 'other sources.'"  Id. at *3; see also, e.g., Corson v. Soc. Sec'y Admin., Comm'r, 2013 DNH 144, 24-25.  But consistent with this directive--and contrary to Gaudette's assertion that "[t]he ALJ did not explain why she disregarded the opinion of [] Proulx"--the ALJ gave specific reasons for giving little weight to Proulx's opinion as to DP's limitations.

For one, the ALJ found that Proulx's view was "wholly inconsistent with" the opinion of a physician who had also treated DP, Dr. Peter Cook, that DP was "a healthy young woman who could perform activities as tolerated and whose lactose intolerance was well under control."  Gaudette argues that,

7

because Cook saw DP "three times for lower back symptoms only,"[2] the ALJ should have given his opinions less weight than those of Proulx, who treated DP "for constipation and gastrointestinal ailments" over a period of four years and therefore, in Gaudette's view, "was more familiar with the overall physical condition" of DP.  But, while "[h]ow long the source has known and how frequently the source has seen" the claimant is a factor in the weight an ALJ should give opinions from "other medical sources," it is not the only factor in that analysis.  SSR 06-03p, 2006 WL 2329939, at *4.

The ALJ may also consider "[t]he degree to which the source presents relevant evidence to support an opinion" and "[h]ow well the source explains the opinion."  SSR 06-03p, 2006 WL 2329939, at *4 (citing 20 C.F.R. § 416.927(d)).  As the ALJ noted, Proulx did not refer to any evidence buttressing her opinions that DP suffered from marked limitations in attending to and completing tasks and in caring for herself, and an extreme limitation in

---

[2]This criticism is not entirely accurate:  while DP did indeed see Cook for back pain, she presented at one of those visits complaining of "trouble with abdominal pain."  It was in response to this complaint that Cook expressed one of the opinions on which the ALJ relied, i.e., "there is a diagnosis . . . of lactose intolerance, but that seems to be well investigated and well under control, and is being looked after." It is also worth noting that, less than one week later, Proulx saw DP, who said "her abdominal pain is definitely improving" and reported regular bowel movements.

health and well-being; she merely checked boxes indicating those limitations on a form. Per § 416.927(d), an ALJ can properly decide to discount opinions expressed in this unexplained manner.[3] See, e.g., McGrath v. Astrue, 2012 DNH 060, 13 n.13 (finding that an ALJ properly gave little weight to opinions expressed in "a two page checklist with scant analysis"); Morin v. Astrue, 2011 DNH 091, 14-15 (finding that an ALJ properly gave little weight to the opinions of a source who "merely checked off boxes indicating [the claimant's] functional abilities" without providing any narrative or medical or clinical findings).

Furthermore, "[t]he fact that a medical opinion is from an acceptable medical source"--like Cook, a physician--"is [also] a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . acceptable medical sources are the most qualified health care professionals." SSR 06-03p, 2006 WL 2329939, at *5. Contrary to Gaudette's suggestion, then, it was within the ALJ's discretion to rely on the fact that Proulx "is not an acceptable medical source" in deciding to give her opinion

---

[3]This approach is particularly apt where the only diagnosis indicated on the form is "constipation lactose deficiency"--a malady that would seem to exert little, if any, effect on a patient's ability to attend and complete tasks and to care for herself, as those concepts are defined in the regulations. See 20 C.F.R. §§ 416.926a(h), 416.926a(k).

9

less weight than Cook's.  Indeed, "[t]here is no error . . . where the ALJ clearly considered a source's opinion and, after evaluating the record including other acceptable medical sources supporting the opposite conclusion, [the ALJ] decided to discount the source's opinion." Corson, 2013 DNH 144, 25.  So there was no error in the ALJ's handling of Proulx's opinion here.

The final section of Gaudette's motion more or less lists the opinions of a number of medical professionals and other sources who treated DP, characterizing those opinions as "relevant evidence with regard to the domains in question" which the ALJ "ignored."  Again, though, Gaudette's motion does not attempt to explain how any of this evidence shows that she is, contrary to the ALJ's findings, markedly or extremely limited in any of the relevant domains of functioning.  Instead, the motion simply recites lengthy portions of DP's medical history (including several verbatim passages from her medical records), interspersed in just a few places with snippets of argument. Those snippets are:

> •"[t]he ALJ gave more weight to the opinions of the teachers at [DP's] school than to the opinions of the doctors who examined and treated [her] from 2006 to 2011";

> • "[t]he above"--a phrase appearing after a lengthy paragraph that simply lists a variety of medical diagnoses and recommendations from several different sources--"is evidence that [DP's] ADHD, skin problems,

10

allergies and gastrointestinal ailments are ongoing and have not ceased"; and

- "[t]he ALJ did not discuss the effects of the medications on [DP]. In sum, the ALJ did not afford proper weight to the findings of the doctors mentioned."

The court is not persuaded by these points, insofar as it can comprehend them. As noted at the outset, the ALJ found that DP suffers from the same severe impairments with which her doctors have diagnosed her: anxiety disorder, ADHD, and lactose intolerance with chronic constipation. So the court does not understand Gaudette's complaints that the ALJ gave insufficient weight to the opinions of DP's doctors, or found that DP's ADHD or "gastrointestinal problems" had "ceased." While the ALJ found that those impairments did not, either alone or together, functionally equal a listed impairment, Gaudette points to no evidence that any medical source ever found otherwise. "Merely diagnosing an impairment does not mean that the impairment is so severe that it 'functionally equals the listings.'" Eaton v. Astrue, 2009 DNH 102, 20 (quoting 20 C.F.R. § 924(a)).

As to DP's "skin problems" and "allergies," Gaudette never claimed at the hearing before the ALJ that either of those problems, alone or in combination with others, amounted to a disabling impairment, so the ALJ cannot be faulted for failing to address those issues in her decision. "When a claimant is

represented [by counsel, as Gaudette was at the hearing], the ALJ should ordinarily be entitled to rely on . . . counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." Faria v. Comm'r of Soc. Sec'y, 187 F.3d 621 (table), 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) (quotation marks omitted).

Finally, while the ALJ did not make a specific finding as to the side effects of DP's medication, the ALJ noted that "the side effects of medication" was a factor in the "health and physical well-being" domain, see 20 C.F.R. § 416.926a(*l*)(2), and went on to find that DP has less than a marked degree of limitation in that domain. The absence of a specific finding as to the side effects of DP's medication is unsurprising, since its discussion at the hearing before the ALJ was limited to Gaudette's testimony that DP's "ADHD medicines . . . all gave her either migraines or really bad headaches . . . and it's getting worse instead of better."[4] In any event, Gaudette does not explain how DP's migraines could severely limit her health and physical well-being (either alone or in combination with her other symptoms), nor, again, is there any evidence that any medical source ever suggested as much. So the ALJ did not err by failing to mention

---

[4] As the Commissioner points out, the social worker who had been treating DP noted, in February 2010, that she "had no more headaches."

DP's headaches in the written decision.  See Lord v. Apfel, 114 F. Supp. 2d 3, 13 (D.N.H. 2000).

For the foregoing reasons, Gaudette's motion to reverse the ALJ's decision[5] is DENIED, and the Commissioner's motion to affirm the ALJ's decision[6] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: February 3, 2014

cc: Ralph A. Giangregorio, Esq.
    T. David Plourde, AUSA

---

[5] Document no. 8.

[6] Document no. 9.